```
Khatereh Sage Fahimi, Bar No. 252152
sfahimi@littler.com
Carrie A. Stringham, Bar No. 272731
cstringham@littler.com
LITTLER MENDELSON, P.C.
501 W. Broadway, Suite 900
San Diego, California  92101.3577
Telephone:  619.232.0441
Fax No.:    619.232.4302

Attorneys for Defendant
XANITOS, INC.
```

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JILL V. VILLA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>XANITOS, INC.; and DOES 1 through 20, inclusive,<br><br>Defendant. | Case No.<br>(removed from LASC Case No. 22STCV09036)<br><br>**DEFENDANT'S NOTICE TO FEDERAL COURT OF REMOVAL OF CIVIL ACTION PURSUANT TO 28 U.S.C. §§ 1332, 1441, AND 1446**<br><br>Action Date:    May 4, 2022<br>Complaint Filed: March 15, 2022 |

**TO THE CLERK OF THE UNITED STATED DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, PLAINTIFF, AND HER ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that Defendant XANITOS, INC. ("Defendant") hereby removes the above-captioned action from the Superior Court of the State of California, County of Los Angeles, to the United States District Court, Central District of California, pursuant to 28 U.S.C. sections 1332(d) (Class Action Fairness Act of 2005), 1441(b), and 1446 on the following grounds:

**I.    JURISDICTION AND VENUE ARE PROPER**

1.    This Court has original jurisdiction over this action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), which vests the United States district courts

with original jurisdiction of any civil action: (a) that is a class action with a putative class of more than a hundred members; (b) in which any member of a class of plaintiffs is a citizen of a state different from any defendant; and (c) in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs. See 28 U.S.C. § 1332(d). CAFA authorizes removal of such actions in accordance with United States Code, title 28, section 1446. As set forth below, this case meets all of CAFA's requirements for removal and is timely and properly removed by the filing of this Notice.

2.  This employment action was filed in the Superior Court of California for the County of Los Angeles. Accordingly, venue properly lies in the United States District Court for the Central District of California pursuant to 28 U.S.C. sections 84(c), 1391, and 1446.

## II.   PLEADINGS, PROCESS, AND ORDERS

3.  On March 15, 2022, Plaintiff filed a complaint in the Superior Court for the County of Los Angeles entitled JILL V. VILLA, individually and on behalf of all others similarly situated v. XANITOS, INC.; and DOES 1-20, inclusive, Case No. 22STCV10248. (Declaration of Khatereh S. Fahimi in Support of Notice of Removal to Federal Court ["Fahimi Decl."], ¶ 2.) The Complaint alleges the following causes of action: (1) Failure to Pay Minimum Wages; (2) Failure to Pay Overtime Wages; (3) Failure to Provide Meal Periods; (4) Failure to Permit Rest Breaks; (5) Failure to Provide Accurate Itemized Wage Statements; (6) Failure to Pay All Wages Due Upon Separation of Employment; and (7) Violation of Business and Professions Code section 17200, et seq. The allegations of the Complaint are incorporated into this notice by reference without admitting the truth of any of them.

4.  Defendant was served on April 4, 2022, with the Complaint. Attached as Exhibit A is a true and correct copy of the Complaint filed in Los Angeles County Superior Court and served by Plaintiff through National Registered Agents, Inc. (Fahimi Decl., ¶ 3.)

1    5.    Attached hereto as Exhibit B are the remaining documents either served with the complaint or as reflected in the Los Angeles County Superior Court website, along with copies of the Civil Case Cover Sheet and Summons, ADR Information Package, various General Orders of the Los Angeles County Superior Court, Notice of Case Assignment, Minute Order dated March 24, 2022, Initial Status Conference Order dated March 24, 2022, and Proof of Service of Summons filed April 8, 2022.  (Fahimi Decl., ¶ 3.)

6.    On May 3, 2022, Defendant filed an Answer in the Los Angeles County Superior Court and served a copy of that Answer on Plaintiff's counsel of record.  Attached hereto as Exhibit C is a true and correct copy of Defendant's Answer. (Fahimi Decl., ¶ 4.)

7.    To Defendant's knowledge, no further process, pleadings, or orders related to this case have been filed in the Los Angeles County Superior Court or served by any party other than as described above.  To Defendant's knowledge, no proceedings related hereto have been heard in Los Angeles County Superior Court.  (Fahimi Decl., ¶ 5.)

### III.   TIMELINESS OF REMOVAL

#### A.   Notice Of Removal To Adverse Party And State Court

8.    Contemporaneously with the filing of this Notice of Removal in the United States District Court for the Central District of California, the undersigned is providing written notice of such filing to Plaintiff's counsel of record. In addition, a copy of this Notice of Removal will be filed with the Clerk of the Superior Court of the State of California, County of Los Angeles. Fahimi Decl., ¶ 8.

### IV.   CAFA JURISDICTION

9.    CAFA grants United States district courts original jurisdiction over: (a) civil class action lawsuits filed under federal or state law; (b) where the alleged class is comprised of at least 100 individuals; (c) in which any member of a class of plaintiffs is a citizen of a state different from any defendant; and (d) where the matter's amount in controversy exceeds $5,000,000, exclusive of interest and costs. See 28 U.S.C. §

1332(d). CAFA authorizes removal of such actions in accordance with 28 U.S.C. § 1446. As set forth below, this case meets each CAFA requirement for removal, and is timely and properly removed by the filing of this Notice of Removal.

### A.     **Plaintiff Filed a Class Action Under State Law**

10.     Plaintiff filed their action as a class action based on alleged violations of California state law. Complaint, ¶ 2.

### B.     **The Proposed Class Contains at Least 100 Members**

11.     Title 28 U.S.C. § 1332(d)(5)(B) states that the provisions of CAFA do not apply to any class action where "the number of members of all proposed plaintiff classes in the aggregate is less than 100."

12.     Plaintiff filed this action on behalf of "all current and former non-exempt employees of Defendant in the State of California at any time from May 29, 2017 to the date this action settles or proceeds to final judgment." Complaint, ¶ 5.

13.     Between March 23, 2018, and April 27, 2022, Defendant has employed an average of 330 hourly employees in California. Declaration of Juan Vallejo in Support of Defendant's Notice to Federal Court of Removal of Civil Action (hereinafter "Vallejo Decl."), ¶5. Accordingly, Defendant's internal records demonstrate that there are well over 100 putative class members in this case. *Id*.

### C.     **Defendant Is Not a Governmental Entity**

14.     Under 28 U.S.C. § 1332(d)(5)(A), CAFA does not apply to class actions where "primary Defendant are States, State officials, or other governmental entities against whom the district court may be foreclosed from ordering relief."

15.     Defendant is a Corporation, not a state, state official, or other government entity exempt from CAFA. Vallejo Decl. ¶8.

### D.     **There Is Diversity Between at Least One Class Member and Defendant**

16.     "Under CAFA, complete diversity is not required; 'minimal diversity' suffices." *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1021 (9th Cir. 2007).

17. CAFA's minimal diversity requirement is satisfied, inter alia, when "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. §§ 1332(d)(2)(A), 1453(b). In a class action, only the citizenship of the named parties is considered for diversity purposes, and not the citizenship of the class members. *Snyder v. Harris*, 394 U.S. 332, 340 (1969). Additionally, for removal purposes, diversity must exist both at the time the action was commenced in state court and at the time of removal. See *Strotek Corp. v. Air Trans. Ass'n of Am.*, 300 F.3d 1129, 1130-1131 (9th Cir. 2002). Minimal diversity of citizenship exists here because Plaintiff and Defendant are citizens of different states.

18. For diversity purposes, a person is a "citizen" of the state in which she is domiciled. See *Kantor v. Wellesley Galleries, Ltd*., 704 F.2d 1088, 1090 (9th Cir. 1983); see also *Kanter v. Warner-Lambert Co*., 265 F.3d 853, 857 (9th Cir. 2001) (confirming that person's domicile is the place he resides with the intention to remain). Furthermore, allegations of residency in a state court complaint create a rebuttable presumption of domicile supporting diversity of citizenship. *Lew v. Moss*, 797 F.2d 747, 751 (9th Cir. 1986); see also *State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 519 (10th Cir. 1994) (allegation by party in state court complaint of residency "created a presumption of continuing residence in [state] and put the burden of coming forward with contrary evidence on the party seeking to prove otherwise"); *Smith v. Simmons*, No. 1:05-CV-01187-OWW-GSA, 2008 WL 744709, at *7 (E.D. Cal. Mar. 18, 2008) (finding a place of residence provides "'prima facie' case of domicile").

19. According to the Complaint, Plaintiff "is a citizen and resident of the State of California." Complaint, ¶ 10.

20. For purposes of diversity jurisdiction, a corporation is deemed a citizen of its state of incorporation and the state where it has its principal place of business. Section 28 U.S.C. § 1332(c)(1). As clarified by the United States Supreme Court in *Hertz Corp. v. Friend*, 559 U.S. 77, 80-81 (2010), "the phrase 'principal place of business' [in Section 1332(c)(1)] refers to the place where the corporation's high level

officers direct, control, and coordinate the corporation's activities. Lower federal courts have often metaphorically called that place the corporation's 'nerve center.' We believe that the 'nerve center' will typically be found at a corporation's headquarters." See also *Breitman v. May Co. California*, 37 F.3d 562, 564 (9th Cir. 1994) (corporation is citizen of state in which its corporate headquarters are located and where its executive and administrative functions are performed).

21. Defendant Xanitos Inc. is a corporation organized and incorporated under the laws of the State of Pennsylvania. Xanitos' headquarters and corporate offices are located in Newton Square, Pennsylvania, which is where its high-level officers direct, control, and coordinate the corporation's activities and the company performs its executive and administrative functions. Vallejo Decl., ¶¶ 6-7.

22. The presence of Doe Defendant in this case has no bearing on diversity with respect to removal. See 28 U.S.C. § 1441(b)(1) ("In determining whether a civil action is removable on the basis of the jurisdiction under section 1332(a) of this title, the citizenship of Defendant sued under fictitious names shall be disregarded.").

23. Accordingly, the named Plaintiff is a citizen of a state (California) different from Defendant (Pennsylvania), and diversity exists for purposes of CAFA jurisdiction. See 28 U.S.C. §§ 1332(d)(2)(A), 1453.

**E.     The Amount in Controversy Exceeds $5,000,000**

24. This Court has jurisdiction under the CAFA, which authorizes the removal of class actions in which, among the other factors mentioned above, the amount in controversy for all class members exceeds $5,000,000. 28 U.S.C. § 1332(d). "The claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds" this amount. 28 U.S.C. § 1332(d)(6).

25. The removal statute requires that a defendant seeking to remove a case to federal court must file a notice "containing a short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a). The Supreme Court, in *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014), recognized that "as specified

1  in §1446(a), a defendant's notice of removal need include only a plausible allegation
2  that the amount in controversy exceeds the jurisdictional threshold." The defendant's
3  "amount-in-controversy allegation should be accepted" just as a plaintiff's amount-in-
4  controversy allegation is accepted when a plaintiff invokes federal court jurisdiction.
5  *Id*. at 553.

6      26.    Defendant denies the validity and merit of the entirety of Plaintiff's alleged
7  claims, the legal theories upon which they are ostensibly based, and the alleged claims
8  for monetary and other relief that flow therefrom. For purposes of removal only,
9  however, and without conceding that Plaintiff or the putative class are entitled to any
10 damages or penalties whatsoever, it is readily apparent that the aggregated claims of the
11 putative class establish, by a preponderance of evidence, that the amount in controversy
12 well exceeds the jurisdiction minimum of $5,000,000. See *Lewis v. Verizon Communs.*,
13 *Inc.*, 627 F.3d 395, 400 (9th Cir. 2010) (the "amount in controversy is simply an
14 estimate of the total amount in dispute, not a prospective assessment of [D]efendant's
15 liability"); *see also Roth v. CHA Hollywood Med. Ctr., L.P.*, 720 F.3d 1121, 1123 (9th
16 Cir. Cal. 2013) (a defendant "may remove when it discovers, based on its own
17 investigation, that a case is removable.").

18     27.    For purposes of determining whether a defendant has satisfied the amount
19 in controversy requirement, the Court must presume that the plaintiff will prevail on
20 their claims. *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d
21 993, 1001 (C.D. Cal. 2002) (citing *Burns v. Windsor Ins. Co.,* 31 F.3d 1092, 1096 (11th
22 Cir. 1994) (stating that the amount in controversy analysis presumes that "plaintiff
23 prevails on liability."). The ultimate inquiry is what amount is put "in controversy" by
24 a plaintiff's complaint, not what a defendant might actually owe. *Rippee v. Boston Mkt.*
25 *Corp.*, 408 F.Supp.2d 982, 986 (S.D. Cal. 2005); *accord Ibarra v. Manheim Inv., Inc.*
26 775 F.3d 1193, 1198 n.1 (9th Cir. 2015) (explaining that even when the court is
27 persuaded the amount in controversy exceeds $5,000,000, Defendant is still free to
28 challenge the actual amount of damages at trial because they are only estimating the

amount in controversy).

28. Plaintiff filed her Complaint on March 23, 2022, and she alleges a cause of action for violation of the Unfair Competition Law ("UCL"), California Business and Professions Code §§ 17200, et seq. Complaint, ¶¶ 43-48. Alleging a UCL violation may extend the statute of limitations for Plaintiff's and the putative class's meal and rest period claims as well as the overtime and minimum wage claims from three to four years from the filing of the Complaint, which in this case extends the statute of limitations to March 23, 2018. See Cal. Bus. & Prof. Code § 17208; *Cortez v. Purolater Air Filtration Products Co.*, 23 Cal. 4th 163, 178-79 (2000) (four-year statute of limitations for restitution of wages under the UCL).

29. As noted above, Defendant has employed and average of 330 non-exempt employees each week in California. Vallejo Decl., ¶5.

### 1. Amount In Controversy—Plaintiff's Claim For Unpaid Wages

30. In her First Cause of Action, Plaintiff alleges that Defendant "During the relevant time period, Defendant *regularly* failed to pay at least minimum wage to Plaintiff and Class Members for all hours worked." Complaint, ¶ 41 (emphasis added).

31. In her second Cause of Action, that "Defendants failed to pay Plaintiff and Class Members overtime wages for *all* overtime hours." Complaint, ¶ 51 (emphasis added). As such, Plaintiff seeks unpaid wages and overtime compensation, as well as interest, costs and attorneys' fees for Defendant's alleged failure to fully compensate overtime hours. Complaint, ¶¶ 42, 43, 54.

32. California law requires employers to pay employees for all time worked. In addition, California Labor Code section 510 requires that employers pay nonexempt employees one-and-one-half times their regular rate for all hours worked over eight in a day or 40 in a week. Additionally, nonexempt employees must be paid one-and-one-half times their regular rate for the first eight hours worked on the seventh day worked in a single workweek. Employers must also pay double time for all hours worked over 12 in a day, and for all hours worked in excess of eight on the seventh consecutive day

of work in a single workweek. Cal. Lab. Code § 510(a).

33. For purposes of removal only, based on a preliminary review of Defendant's records, the average hourly rate for non-exempt employees during the class period is $15.00. Vallejo Decl., ¶ 5.

34. Using a conservative estimate of just one (1) hour of unpaid wages per work week at the employees regular (not overtime) rate, the amount in controversy for the unpaid wage claim totals **$1,054,350** (330 average employees per workweek * 1 hour per workweek * 213 work weeks between March 23, 2018 and April 27, 2022* $15.00 = $1,054,350). *See Torrez v. Freedom Mortg. Corp.*, No. EDCV 17-867 JGB (KKx), 2017 WL 2713400, *3 (C.D. Cal. Jun. 22, 2017) (finding assumption rate of three hours of overtime per week was reasonable where complaint allegations where defendant's assumptions were based on the allegations in the complaint that defendant "engaged in a pattern and practice" of wage abuse); *Stanley v. Distribution Alts., Inc.*, No. EDCV 17-2173 AG (KKx), 2017 WL 6209822, at *2-3 (C.D. Cal. Dec. 6, 2017) (finding that pleading "pattern and practice" supports assumption of two hours of overtime per week); *Herrera v. Carmax Auto Superstores California, LLC*, EDCV-14-776-MWF (VBKx), 2014 WL 12586254, at *6 (C.D. Cal. Jun. 12, 2014) ("Defendant cannot be expected to produce evidence of how often overtime violations may occur. Defendant must be entitled to monetize this claim with a reasonable and conservative estimate.").

### 2. Amount in Controversy—Plaintiff's Meal Break Claim

35. In her Third Cause of Action, Plaintiff alleges that during the relevant time "Plaintiff and Class Members did not receive compliant meal periods for working more than five (5) and/or ten (10) hours per day because their meal periods were missed, late, short, interrupted, and/or they were not permitted to take a second meal period." Complaint ¶ 60. Plaintiff seeks one additional hour of pay at the regular rate of compensation for each workday that a meal or rest period was not provided. Complaint, ¶¶ 61-63.

36. California law permits recovery of one additional hour of pay at the employee's regular rate of compensation for each workday a meal period was not provided. Cal. Lab. Code § 226.7. The statutory period for recovery for a Labor Code section 226.7 claim pursued with a Business & Professions Code claim is four years. *See* Cal. Civ. Proc. Code § 338(a) (setting out a three-year limitations period); Cal. Bus. & Prof. Code § 17208 (explaining the three-year statute of limitations can be extended to four years through the pleading of a companion claim under the UCL).

37. For purposes of establishing the amount in controversy at removal, Defendant need not make Plaintiff's case for them, or prove the amount in controversy to a certainty. Rather, Defendant can rely on "reasonable assumptions" and a "chain of reasoning that includes assumptions" based on reasonable grounds to calculate the amount in controversy. *Anderson v. Starbucks Corp.*, 2020 WL 7779015, *8 (N.D. Cal. Dec. 31, 2020).

38. Plaintiff's Complaint alleges Class Members "did not receive" compliant meal periods and that Defendants had "practice and policy" that violated California laws which supports a conservative assumption of one (1) missed meal period per workweek. *See Behrazfar v. Unisys Corp.*, 687 F. Supp. 2d 999, 1004 (C.D. Cal. 2009) (when a defendant's calculations are "relatively conservative, made in good faith, and based on evidence whenever possible," the court should find that the "[d]efendant has established by a preponderance of the evidence that the amount in controversy exceeds $5,000,000."); *Oda v. Gucci Am., Inc.*, No. 2:14-CV-07469, 2015 WL 93335, at *5 (C.D. Cal. Jan. 7, 2015) (finding that a 50% violation rate for meal and rest period violations was reasonable despite allegations that employees only "sometimes" were denied meal or rest periods); *Sadler v. Ensignal, Inc.*, No. 1:17-cv-00312-AWI-SAB, 2017 WL 2333528, at *5 (E.D. Cal. May 26, 2017) (where case removed on diversity grounds, accepting defendant's assumption that violation occurred once per day where plaintiff alleged "that he systematically worked for a period of more than five hours in a workday without being provided a mandatory, duty-free lunch").

LITTLER MENDELSON, P.C.
501 W. Broadway, Suite 900
San Diego, CA 92101.3577
619.232.0441

39. Using a conservative estimate of one (1) missed meal period per workweek, the amount in controversy for the missed meal period claim totals **$1,054,350** (330 average employees per workweek * 1 hour per workweek * 213 work weeks between March 23, 2018 and April 27, 2022* $15.00 = $1,054,350).

### 3.     Amount in Controversy—Plaintiff's Rest Break Claim

40. In her Fourth Cause of Action, Plaintiff alleges that "Plaintiff and Class Members did not receive a ten (10) minute rest period for every four (4) hours or major fraction thereof worked." Complaint ¶ 67. Plaintiff seeks one additional hour of pay at the regular rate of compensation for each workday that a rest period was not provided. Complaint, ¶¶ 69-70.

41. California law permits recovery of one additional hour of pay at the employee's regular rate of compensation for each workday a rest period was not provided. Cal. Lab. Code § 226.7.

42. Using a conservative estimate of one (1) missed meal period per workweek, the amount in controversy for the missed meal period claim totals **$1,054,350** (330 average employees per workweek * 1 hour per workweek * 213 work weeks between March 23, 2018, and April 27, 2022* $15.00 = $1,054,350).

### 4.     Amount in Controversy—Plaintiff's Claim for Inaccurate Wage Statements

43. In her Fifth Cause of Action, Plaintiff alleges that Defendant "Defendants have knowingly and intentionally failed to comply with Labor Code § 226(a) on wage statements that were provided to Plaintiff and Class Members." Complaint, ¶ 73. Plaintiff further alleges "Plaintiff and Class Members have suffered injury and damage to their statutorily-protected rights." Complaint, ¶ 74.

44. Labor Code section 226(e) provides for a statutory penalty for violations of Labor Code section 226(a)'s wage statement requirements of $50 or actual damages per employee for the initial pay period in which a violation occurs, and $100 per employee for each violation in a subsequent pay period, not exceeding an aggregate

amount of $4,000 per employee. Cal. Lab. Code § 226(a). The statutory period for Labor Code section 226(e) penalties is one year. Cal. Code Civ. Proc. § 340.

45. Defendant denies the validity and merit of Plaintiff's wage statement claim. For purposes of removal only, based on a review of its records, Defendant has employed and at least 330 non-exempt employees each week since November 2020. Employees are paid biweekly. Vallejo Decl., ¶ 5. There are approximately 26 weeks in the relevant period, as such each employee's wage statement damages would total $2,550 (([$50 * 1] + [$100 * 25]). The total amount in controversy for Plaintiff's wage statement penalty claim is **$841,500** (330 employees * $2,550 average penalty per employee = $841,500).

### 5. Amount in Controversy— Failure To Pay All Wages Due Upon Separation Of Employment

46. In her Sixth Cause of Action, Plaintiff alleges that "Defendants willfully failed to pay the Waiting Time Subclass all their earned wages upon termination, including, but not limited to, proper minimum wage. and overtime compensation, meal period premiums, and rest period premiums either at the time of discharge or within seventy-two (72) hours of their leaving Defendants' employ." Complaint, ¶ 80. Plaintiff further alleges "Plaintiff and Class Members have suffered injury and damage to their statutorily-protected rights." Complaint, ¶ 74.

47. Labor Code section 203 provides that if an employer willfully fails to pay wages owed immediately upon discharge or resignation in accordance with Labor Code sections 201 and 202, then the wages of the employee shall continue as a penalty from the due date at the same rate until paid or until an action is commenced; but the wages shall not continue for more than thirty (30) days.

48. Since March 23, 2019, no less than 500 employees have separated their employment from Defendant. Defendant's hourly employees typically work 8 hours a day. Vallejo Decl., ¶ 5  For purposes of removal only, based on a review of its records, Defendant estimates that this claim is worth **$1,800,000** (500 employees * 8 hours a day

1 | * $15.00 average hourly* 30 days=$1,800,000)

### 6. Amount in Controversy—Plaintiff's Claim for Attorneys' Fees

49. Finally, Plaintiff seeks attorneys' fees and costs in her Complaint. Complaint, Prayer for Relief ¶ 13. Thus, the Court must consider attorneys' fees in determining whether the amount in controversy is met as it is well-settled that claims for statutory attorneys' fees are to be included in the amount in controversy. *See, e.g., Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005), *cert. denied*, 127 S.Ct. 157 (2006); *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) ("We hold that where an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy.").

50. In California, it is not uncommon for an attorneys' fee award to be 25 to 33 percent of a settlement or judgment. *See, e.g., McGuigan v. City of San Diego*, 183 Cal. App. 4th 610, 638 (2010) (noting attorneys' fees paid in settlement of $1.6 million); *Vasquez v. California*, 45 Cal. 4th 243, 249 (2008) (noting award of $435,000 in attorneys' fees for class claims involving failure to pay wages, liquidated damages, penalties, and waiting time penalties); *Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157, 1216-1218 (2008) (affirming award of $727,000 in attorneys' fees plus a multiplier that equated to total fees of $1,199,550 in class case involving violations of a living wage ordinance, the California Labor Code, as well as unfair competition and contract claims); *see also Shaw v. Toshiba Am. Info. Sys., Inc.*, 91 F. Supp. 2d 942, 972 (E.D. Tex. 2000) ("Empirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery.").

51. The attorneys' fees benchmark in the Ninth Circuit is 25 percent. *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989) ("We note with approval that one court has concluded that the 'bench mark' percentage for the fee award should be 25 percent."); *Lo v. Oxnard Euro. Motors, LLC*, 2012 WL

1932283, at *3 (S.D. Cal. May 29, 2012) ("The Ninth Circuit has accepted as a benchmark for an attorneys' fees awards a twenty-five percent of the common fund recovery.").

52. Based on the above, the amount in controversy for Plaintiff claim for off the clock work (at straight time not overtime), meal period premiums, rest break premiums, wage statement penalties and final pay is conservatively **$5,804,550**. This subtotal exceeds $5,000,000 absent any inclusion of attorneys' fees. However, taking into account attorneys' fees at the benchmark percentage of 25 percent further increases the amount in controversy by $1,451,138. for a total amount in controversy of **$7,255,688**.

## V. SUMMARY

53. As explained above, removal of this action is proper, as the aggregate value of Plaintiff's causes of action for unpaid overtime, meal period premiums, rest break premiums, failure to pay wages at time of termination, wage statement penalties, and unreimbursed business expenses and attorneys' fees are well in excess of the CAFA jurisdictional requirement of $5 million. *See* 28 U.S.C. § 1332(d)(2):

| Plaintiff's Alleged Claim | Amount in Controversy Conservative Estimate |
|---|---|
| Unpaid Wages | $1,054,350 |
| Meal Period Premiums | $1,054,350 |
| Rest Period Premiums | $1,054,350 |
| Inaccurate Wage Statements | $ 841,500 |
| Final Pay | $1,800,000 |
| Attorneys' Fees | $1,451,138 |
| **Amount in Controversy** | **$7,255,688** |

54. Accordingly, although Defendant denies Plaintiff's claims as alleged in the Complaint, the jurisdictional minimum is satisfied for purposes of determining the amount in controversy, as it exceeds the $5,000,000 threshold required under CAFA.

55. WHERFORE, Defendant hereby removes this action from the Superior Court of the State of California, County of Los Angeles, to the United States District Court for the Central District of California.

Dated:  May 4, 2022

LITTLER MENDELSON, P.C.

/s/ Khatereh S. Fahimi
Khatereh Sage Fahimi
Carrie Stringham
Attorneys for Defendant
XANITOS, INC.

4864-2298-6269.1 / 079629-1020